UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CYNTHIA WELLS** )<br>)<br>    **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner of Social Security,** )<br>)<br>    **Defendant.** )<br>) | Civil Action Number<br>    **2:15-cv-00740-AKK** |

## MEMORANDUM OPINION

Plaintiff Cynthia Wells ("Wells") brings this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the final decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Wells filed her application for Title XVI Supplemental Security Income on September 6, 2012 (R. 277), alleging a disability onset date of June 4, 2012, *id.*, due to bi-polar disorder and post-traumatic stress disorder, (R. 280). After the SSA

1

denied her application on November 9, 2012 (R. 174–178), Wells requested a hearing, (R. 179–180). At the time of the hearing on November 12, 2013, Wells was 50 years old, (R. 121, 128), had a twelfth grade education, and past work experience as a crown and bridge technician. (R. 280). Wells has not engaged in substantial gainful activity since her application date. (R. 123).

The ALJ denied Wells' claim on December 6, 2013, (R. 118–20), which became the final decision of the Commissioner when the Appeals Council refused to grant review on March 17, 2015, (R. 1-4). Wells then filed this action pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g), on April 30, 2015. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable

and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself*. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

5

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Wells had not engaged in substantial gainful activity since June 4, 2012 and therefore met Step One. (R. 123). Next, the ALJ found that Wells satisfied Step Two because she suffered from the severe impairments of post-traumatic stress disorder (PTSD), anxiety, bi-polar disorder, and arthritis in the hands and left shoulder. *Id.* The ALJ then proceeded to the next step and found that Wells did not satisfy Step Three since she "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 124). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel,* 800 F.2d at 1030, he proceeded to Step Four, where he determined that Wells has the residual functional capacity (RFC) to:

> [P]erform light work… except she can only occasionally climb ramps or stairs or reach overhead with her left upper extremity. Further [Wells] is limited to frequent handling and fingering in her bilateral hands. She can only perform work that is limited to SVP one through four tasks that require only occasional interaction with the public and coworkers.

(R. 126). In light of Wells' RFC, the ALJ determined that Wells is unable to perform any past relevant work. (R. 128). Lastly in Step Five, the ALJ considered Wells' age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Wells] can perform." (R. 129). Therefore, the ALJ found that Wells "has not been under a disability, as defined in the Social Security Act, from June 4, 2012." (R. 130).

## V. Analysis

Wells raises multiple contentions of error which the court will outline and address below. None of these contentions, however, establish that the ALJ committed reversible error. Therefore, the court will affirm the ALJ's decision.

1. *Alleged failure to accept Wells' diagnosis of lupus and failing to consider this condition a severe impairment*

In two related contentions, Wells maintains that the ALJ erred by not accepting her diagnosis of lupus and, instead, determining that she suffered from arthritis, and also failed to consider this a severe impairment. Doc. 9 at 8. The substantial evidence supports the ALJ's decision. Specifically, while the medical record contains evidence that her rheumatologist, Dr. Greg Eudy, had treated Wells for

7

lupus for the preceding 2 years, (R. 342–395), the record also contains evidence that Wells had an "apparent recent negative ANA" blood test result, (R. 350), which raised doubt regarding the accuracy of the lupus diagnosis, (R. 124). However, rather than using the negative ANA test to decide that Wells did not suffer from an impairment, the ALJ stated that he would instead analyze Wells' "joint complaints under the severe impairment of arthritis of hands and shoulder." (R. 124). The substantial evidence supports this decision because, as the ALJ stated, the record contained no definitive diagnosis of lupus. As a result, the ALJ in his analysis noted that Dr. Eudy had included lupus as one of Wells' impairments while also noting the need for retesting to confirm the diagnosis. (R. 124).

To the extent the ALJ erred, the error is harmless because there is nothing in the record to establish that the lupus diagnosis qualified as a severe or disabling impairment. *See, e.g., Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) (holding that the specific diagnosis "is an insufficient basis for a finding that the impairment is severe" and the "objective medical evidence must confirm that the impairment is severe."). Moreover, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1988). Here, the evidence demonstrates that the ALJ correctly found that Wells' impairments did not rise to

the level of severity necessary for a disability finding. In reaching his decision, the ALJ first discussed Wells' sparse treatment record during the applicable period, pointing out that although Wells had health insurance through her employer, Wells did not begin receiving treatment until one year after the alleged onset date. (R. 127). Even then, Wells only sought limited treatment—one visit with a primary care doctor, and four visits over the course of two years with a rheumatologist. (R. 127, 345–357). Moreover, at each of these appointments, although Wells displayed limited range of motion in her left shoulder, she had "full sensation and power in all of her extremities." (R. 127). The ALJ concluded that this sparse record simply did not support finding that Wells' joint conditions rose to the level of severity required for a finding of disability. (R. 124–125).

   In reaching this finding, the ALJ also relied on the functional evaluation of the severity of Wells' joint impairment he performed. Based on assessments conducted by Wells and Ginger George, a friend who spends a minimum of two hours a day with Wells, the ALJ found that Wells had only mild restrictions in her daily living activities, (R. 124), noting that Wells lives alone and is able to prepare meals, do household chores, and tend to her own personal care, (R. 124). This assessment is consistent with George's, who stated that other than the fact that Wells must be "reminded to bathe," "encouraged to dress," and "reminded to eat," (R. 306), Wells "is able to pick up, but needs help cleaning. [They] do laundry together twice a

week" and "pick[] up/straighten[] throughout the day to lessen anxiety," (R. 307). Significantly, George's assessment is silent on Wells' physical pain and focuses on Wells' anxiety. (R. 302–312). The anxiety focus is consistent with Wells' own function report, which is also silent on her allegedly disabling physical pain and contains mostly complaints of mood swings and difficulty sleeping at night. (R. 295–301). Ultimately, while daily activities do not necessarily undermine assertions of disability, the ALJ is allowed to look at the aggregate of activity, as well as Wells' own prior testimony, in ascertaining whether the record is inconsistent with a finding of disability. *See generally, Johnson v. Barnhart*, 268 F. Supp.2d 1317 (M.D. Fla. 2002).

Based on this record, the court finds that the substantial evidence supports the ALJ conclusion that while Wells suffers from pain due to a joint condition that is a severe impairment, it nonetheless did not rise to the severity level required for a disability finding. Therefore, the ALJ's decision is due to be affirmed.

   2. *Alleged failure to consider and weigh the opinion of the treating physician*

Wells contends next that the ALJ erred in giving more weight to the opinion of the consultative examining physician, instead of Wells' treating physician's. *See* doc. 9 at 11. Wells is correct that the opinion of a treating physician is generally entitled to more weight than a consulting physician's. *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir. 1984). Moreover, the "report of a consulting physician who

examined a claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." *Kent v. Sullivan*, 788 F. Supp. 541, 544 (N.D. Ala. 1992). Still, despite these general principles of law, reversal is not warranted here because the ALJ did not ignore the opinion of Wells' treating physician. While Wells emphasizes that her treating physician indicated that Wells was at a high risk for disability and morbidity due to her health conditions, doc. 9 at 11, critically, Wells points to no evidence that Dr. Eudy actually considered her disabled at the time of her application, *id.* at 12. Also, although Dr. Eudy's treatment notes state that Wells is at risk for disability due to lupus, (R. 347, 350, 353, 357), this statement is in conflict with his notation of a negative ANA test, (R. 350). Furthermore, Dr. Eudy's notes also show that he was not entirely certain of the lupus diagnosis and was exploring alternative diagnoses for the pain in Wells' shoulder by referring Wells to an orthopedist for a possible rotator cuff tear or bursitis. (R. 347).

Ultimately, although the treatment notes establish Dr. Eudy's treatment plan as it related to Wells' pain and lupus diagnosis, they fall far short of constituting an opinion supporting a finding that Wells is disabled. At most, Dr. Eudy's notes are "a prediction about the plaintiff's future condition," *see Moody v. Barnhart*, 295 F. Supp. 2d 1278, 1285 (N.D. Ala. 2003), and as such do not support a finding of a current disability. Furthermore, this court's review of the record finds that it is

devoid of any evidence that Dr. Eudy or any other treating physician considered Wells disabled as a result of her impairments, much less that their opinions conflicted with the ALJ's decision. *See generally, Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983). Accordingly, the court finds no error in the ALJ's decision to disregard Dr. Eudy's prediction about Wells' future condition.

> 3. *Alleged failure to rely on substantial evidence in rejecting Wells' testimony regarding her pain and mental limitations*

Wells also argues that the ALJ failed to rely on substantial evidence in dismissing her subjective testimony of her pain and mental limitations. Where the ALJ discredits subjective testimony, he must "articulate explicit and express reasons for doing so." *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). A failure to do so requires that the testimony be accepted as true. *Id.* (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). As shown below, because the ALJ articulated his reasons for discrediting Wells' subjective complaints, the court rejects Wells' contentions. *See Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) ("a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Specifically, as it relates to Wells' pain testimony, the ALJ found that while the medical records supported Wells' testimony regarding the presence of pain, it did not support her statements regarding the "intensity, persistence, and limiting

effects of these symptoms." (R. 126). To support this determination, the ALJ articulated multiple reasons. First, the ALJ pointed out that although Wells had health insurance when she purportedly started experiencing the disabling pain, "she did not begin receiving regular treatment for her physical complaints until… one year after her alleged onset date." (R. 127). Second, even when Wells began to complain to her primary care physician about pain and range of motion in her left shoulder, as the ALJ noted, Wells still had full sensation in her extremities. *Id.* Finally, the ALJ noted that Wells sought treatment that was fairly limited in scope, which belied Wells' contentions of disabling or substantially limiting pain. *Id.* These articulated reasons are supported by the record and provide a sufficient basis for the ALJ to reject Wells' pain testimony.

    Next, with respect to Wells' mental impairments, the ALJ pointed out first that while in the beginning of her treatment, Wells had difficulty concentrating, by the end of 2012, "[Wells] was reporting reduced anxiety and she continued to display normal objective signs during her mental status examinations." *Id.* The ALJ then noted that since Wells' alleged onset date, "[Wells] has consistently been able to independently tend to her personal care and she has remained independent, living by herself in a house. She independently performs all of her household chores, she attends multiple Alcoholics Anonymous meetings per week, she regularly visits with friends, and she watches movies and prepares meals." (R.

128). Finally, the ALJ highlighted the absence of any episodes of decompensation, noting that, although Wells displayed in June 2012 "impaired concentration and memory, [she nonetheless] had goal-directed thinking and appropriate grooming," and that by the end of 2012, Wells reported to her therapists "reduced anxiety" and "continued to display normal objective signs during her mental status examinations." (R. 127). Based on all these reasons, the ALJ concluded that the record did not support a finding of disability, that Wells was not as incapacitated as she alleged, and that "the longitudinal history [did] not bear out a debilitating degree of functional limitations, such that would eliminate all work on a continuing basis." (R. 128).

The substantial evidence supports the ALJ's decision that Wells' medical records contradicted her subjective testimony. (R. 127–28). In addition to the reasons cited by the ALJ, as discussed above, notwithstanding Wells' contention that she suffered from disabling pain, in both Wells and her friend's function reports, there is no mention of disabling pain. (R. 295–301, 302–312). Moreover, in her application for benefits, Wells limited her inability to work to her bi-polar and post-traumatic stress disorders, and denied having appointments scheduled to deal with any physical pain. (R. 287–294). Furthermore, at the hearing, Wells mentioned for the first time having episodes of delusional thinking or hallucinations, (R. 148–149), but, as the ALJ noted, a review of the medical record

shows that while there is some memory impairment that has remained consistent throughout her treatment history, Wells evinced goal directed thinking and appropriate thoughts, (R. 127). Indeed, the medical record demonstrates that Wells manifested clear cognition and explicitly denied hallucinations at each medical appointment. (R. 330–344, 396–404, 405–431). For all these reasons, the court concludes that the ALJ clearly articulated his reasons for finding Wells not credible and affirms the ALJ's credibility determination. *See Wilson*, 284 F.3d at 1226 (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so").

### VI.   Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Wells is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 12th day of January, 2016.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE